UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MESHA MAINOR, | |
| Plaintiff, | CIVIL ACTION NO. |
| v. | 1:22-CV-1312-SEG |
| FULTON COUNTY, FULTON COUNTY ETHICS BOARD, FULTON COUNTY DISTRICT ATTORNEY'S OFFICE, MARVIN ARRINGTON, individually and in his official capacity as Fulton County Commissioner for District 5, FANI WILLIS, individually and in her official capacity as Fulton County District Attorney, | |
| Defendants. | |

**O R D E R**

This case is before the Court on the motions to dismiss filed by Defendants Fulton County Commissioner Marvin Arrington and Fulton County (Doc. 16), District Attorney Fani Willis (Doc. 13), and the Fulton County Ethics Board (Doc. 20). Plaintiff is Georgia State Representative Mesha Mainor. The motions have been fully briefed. Having considered the parties' briefing and the applicable law, the Court enters the following order.

## I.    Background

The allegations in the complaint are summarized as follows.[1]  In January 2019, Plaintiff Mesha Mainor hired Corwin Monson as a volunteer on her campaign for a seat in the Georgia House of Representatives.  (Doc. 1 at 5, Compl. ¶¶ 9-11.)  In February 2019, Mainor terminated Monson from his position for "unruly, belligerent behavior."  (*Id*., Compl. ¶ 14.)

Monson then began to stalk Mainor.  (*Id*., Compl. ¶¶ 14, 15.)  He appeared, uninvited, at campaign events, at her church, and outside her house.  (*Id*. at 5-6, Compl. ¶¶ 16-18.)  He called her from multiple numbers.  (*Id*. at 6, Compl. ¶ 17.)  He stated that he was in love with Mainor and proposed to her in front of her minor children.  (*Id*. at 6, Compl. ¶ 18.)  In June 2019, Monson was cited for criminal trespass after he refused to leave Mainor's property.  (*Id*. at 6, Compl. ¶ 20.)  In August 2019, Mainor sought and was granted a temporary protective order ("TPO") against Monson.  (*Id*. at 6, Compl. ¶ 21.)

On September 7, 2019, Monson was arrested for violating the TPO.  A month later, he was released on bond.  (*Id*. at 6, Compl. ¶ 22.)  In October 2019, Monson was indicted for aggravated stalking based on the September 2019

---

[1] At this stage in the case, the Court accepts well-pled allegations as true and construes them in the light most favorable to Plaintiff.  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321-22 (11th Cir. 2012).

arrest.  (*Id*. at 6, Compl. ¶ 23.)  About ten months later, on August 12, 2020, Monson was arrested again for violating the TPO.  (*Id*. at 6, Compl. ¶ 24.)  The District Attorney's office procured a second indictment on the second TPO violation.  (*Id*. at 7, Compl. ¶ 25.)

Monson hired his "close friend and associate," Marvin Arrington, to represent him on the aggravated stalking indictment arising from the September 2019 arrest.  (*Id*. at 7, Compl. ¶ 27.)  Arrington is the County Commissioner for District 5 in Fulton County.  (*Id*. at 7, Compl. ¶ 28.)

Mainor alleges that Arrington influenced the criminal prosecutions of Monson in both aggravated stalking cases, using his role as a county commissioner to secure favorable treatment for his client.  (*Id*. at 7-12, Compl. ¶¶ 29-44.)  According to the complaint, Arrington facilitated a plea agreement that permitted Monson to plead guilty to a reduced charge in contravention to the District Attorney's policies.  (*Id*. at 9, Comp. ¶¶ 37, 38.)  Plaintiff also alleges that Arrington conspired with Monson to have the judge on Monson's case removed.  (*Id*. at 10, Compl. ¶ 39.)  Arrington further caused Mainor public embarrassment by stating, "That bitch is crazy," referring to Mainor, on a recorded jail phone call that was released to the public. (*Id*. at 12, 25 Compl. ¶¶ 41, 114.)

The complaint goes on to assert that Willis, after taking office, failed adequately to investigate the aggravated stalking charges by declining to interview certain witnesses. (*Id*. at 15, Compl. ¶ 58.)  Willis ultimately offered Monson a plea deal.  (*Id*. at 13, Compl. ¶ 48.)  On Indictment 19SC171997, Willis offered Monson a plea of three years, with one year in custody, and credit for time served.  (*Id*. at 13, Compl. ¶48.)  On Indictment 21SC178607, Monson was permitted to plead to a misdemeanor.  (*Id*. at 13, Compl. ¶ 53.)  Mainor asserts that she was not informed of the negotiations, in violation of the Georgia Crime Victims Bill of Rights, O.C.G.A. §17-17-1, *et seq*., and states she did not "approve" of the plea deals.  *(Id*. at 13, Compl. ¶¶ 49, 50.)

In October 2020, Mainor filed a complaint against Arrington with the Fulton County Ethics Board for allegedly using his office as commissioner for financial gain.  (*Id*. at 17-18, Compl. ¶¶ 72, 73.)  She alleges that the Ethics Board failed to follow proper procedure in adjudicating her complaint.  The complaint was closed in March 2021 with no action taken against Arrington. (*Id*. at 19, Compl. ¶ 81.)

Monson was released from jail in November 2021, after which he began to stalk Mainor again.  (*Id*. at 19, Compl. ¶¶ 82, 83.)  Mainor informed the District Attorney's Office, but no action was taken.  (*Id*. at 20-21, Compl. ¶ 87, 95.) Monson later attempted to enter the Coverdale Legislative Office Building

where Plaintiff works, in violation of the TPO.  (*Id.* at 20, Compl. ¶¶ 88-89.)
The District Attorney declined to prosecute.  (*Id.* at 21, Compl. ¶¶ 95-97.)

Mainor's complaint describes her emotional distress relating to the
circumstances in this case.  She is fearful for her personal safety.  (*Id.* at 27,
Compl. ¶ 125.)  She experienced anxiety and depression to the extent that she
had to withdraw from her doctoral studies.  (*Id.*)  She experienced "the strain
and trauma of her children living in fear."  (*Id.* at 28, Compl. ¶ 125.)

Mainor brings three claims: (1) a claim under 42 U.S.C. § 1983 for
violation of her Fourteenth Amendment right to substantive due process,
asserted against all defendants; (2) a claim for intentional infliction of
emotional distress against Arrington, Willis, and the Fulton County District
Attorney's Office, and (3) a state law RICO claim against Arrington, Willis, and
the Fulton County Ethics Board.[2]  Defendants filed motions to dismiss the
complaint.  (Doc. 13, 16, 20.)

---

[2] In her statement of jurisdiction, Plaintiff cites 28 U.S.C. § 2201, which
authorizes a federal court to enter a declaratory judgment.  The Court assumes
the reference to this statute is a scrivener's error.  There is no other reference
to declaratory relief in the complaint or in Plaintiff's multiple briefs.  The
prayer for relief seeks only monetary damages.  Fulton County, acknowledging
uncertainty about whether Plaintiff brought a claim for declaratory relief,
moved to dismiss it.  Mainor made no response.

## II.    Legal Standard

Rule 12(b)(6) provides for dismissal of a case when the complaint "fail[s] to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6). When evaluating a Rule 12(b)(6) motion, the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321-22 (11th Cir. 2012).  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully," and when the "complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement of relief."  *Id.* (citing *Twombly*, 550 U.S. at 557)  The complaint thus must contain more than mere "labels and conclusions, and a formulaic recitation of a cause of action's elements"—it must allege facts that "raise the right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

## III.   Discussion

Representative Mainor's complaint describes a traumatic experience. Mainor was the victim of aggravated stalking by a man who would not leave her alone after she made it clear his advances were unwelcome.  His actions caused her, over a period of years, to fear for her personal safety and that of her children.  The situation escalated such that Plaintiff had to move homes three times in one year.  Accepting the complaint's allegations as true,[3] the difficulty of this experience was compounded when a county commissioner used his influence to secure favorable treatment for his friend, who was soon released and began to stalk Mainor again.  Plaintiff further alleges that the commissioner was recorded in a publicized telephone call referring to Plaintiff with crass and misogynist language.  Plaintiff contends that Defendants' disregard of her experience as a victim of crime caused her emotional distress and put her safety at risk.

The difficulty for Plaintiff, however, is that her allegations do not map neatly onto a federal constitutional claim.  She has sued persons and entities whom she says are responsible for Monson getting a too-lenient sentence.  But disagreement with a negotiated plea in a criminal case is not the basis for a

---

[3] The Court takes no position on the veracity of the allegations.

7

federal lawsuit.  Prosecutorial decisions are largely protected by immunity. Counties, speaking generally, are not liable for the decisions of prosecutors. Further, the alleged ethical violations reported in the complaint are not matters that can be addressed by this federal court.

While Plaintiff's frustration is understandable, her Section 1983 due process claims cannot succeed against any defendant named here.  The specific reasons for the dismissal of the Section 1983 claim as to each defendant are set forth below.  As for the state law claims, the Court declines to exercise supplemental jurisdiction over them.

### A. Section 1983 Claims Against Fulton County District Attorney's Office and DA Fani Willis (Doc. 13.)

Plaintiff brings a § 1983 claim against the Fulton County District Attorney's Office and DA Fani Willis for violation of Plaintiff's substantive due process rights.  Willis is sued in her official and individual capacities.  The claims against these Defendants will be dismissed for the following reasons.

We first consider the due process claim against the Fulton County District Attorney Office.  As this Court has frequently held, a district attorney's office is not an entity subject to suit under § 1983.  *See, e.g., Bobby Butler v. Georgia*, No. 1:21-CV-01589-SCJ, 2022 WL 274392, at *6, n.10 (N.D. Ga. Jan. 24, 2022) (*aff'd sub nom. Butler v. Georgia*, No. 22-10291, 2022 WL 17484910

(11th Cir. Dec. 7, 2022) (sovereign immunity barred claims against Office of the Fulton County District Attorney).[4]  The § 1983 claim against the District Attorney's Office is dismissed.

It follows from the legal principle just stated that the § 1983 claim against Willis in her official capacity must also be dismissed.  "[A]n official-capacity suit against a state officer is not a suit against the official but rather is a suit against the official's office."  *Hafer v. Melo*, 502 U.S. 21, 26 (1991).  Willis acts as a state officer when she makes prosecutorial decisions related to her office.  *See, e.g., Owens v. Fulton Cnty.*, 877 F.2d 947, 951 (11th Cir. 1989) ("[T]he district attorney for the Atlanta Judicial Circuit is not a Fulton County official, but rather a state official acting on behalf of the state when exercising his discretion in prosecutorial decisions.")  And where a plaintiff seeks only monetary relief—as Plaintiff does here—"neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

---

[4] *See also Clark v. Georgia*, No. 1:21-CV-3396-SDG-JSA, 2021 WL 8084671 (N.D. Ga. Nov. 8, 2021), *report and recommendation adopted*, No. 1:21-CV-03396-SDG, 2022 WL 898362 (N.D. Ga. Mar. 28, 2022) (stating that the Fulton County District Attorney's office was an improper defendant); *Tyner v. Howard*, No. 1:16-CV-4341-TWT-JFK, 2017 WL 57994, at *2 (N.D. Ga. Jan. 6, 2017) ("As a general rule, an Office of the District Attorney is not an entity subject to suit."), *report and recommendation adopted by*, 2017 WL 552819 (N.D. Ga. Feb. 10, 2017).

Here, it cannot reasonably be disputed that Willis has been sued for actions she took in her role as a prosecutor.  These include her decisions to offer Monson a plea deal; to forego certain witness interviews; and to decline to prosecute Monson for an alleged violation of Mainor's TPO.  All such acts fall within the scope of Willis's prosecutorial decision-making responsibilities.  As such, they were state functions, and the suit against Willis in her official capacity is the equivalent of a suit against the state.   There is no shortage of case law to illustrate this point.[5]   Plaintiff's official capacity claims against Willis will be dismissed.

We turn next to the § 1983 claim against Willis in her individual capacity.  As to this claim, Willis is  entitled  to prosecutorial  immunity  from

---

[5] *See, e.g., Williams v. Monroe Cnty. Dist. Att'y*, 702 F. App'x 812 (11th Cir. 2017) (stating that Eleventh Amendment bars claims against the district attorney's office and its district attorneys acting in their official capacities); *Johnson v. Georgia*, No. CV 421-127, 2022 WL 1811191, *2 (S.D. Ga. June 2, 2022) (finding plaintiff's claims against the "Office of the District Attorney" to be "facially invalid" and barred by the Eleventh Amendment); *Hall v. Georgia, Dep't of Pub. Safety*, No. 1:14-CV-03295-LMM, 2015 WL 12867005, at *3-*4 (N.D. Ga. June 30, 2015), *aff'd sub nom. Hall v. Georgia*, 649 F. App'x 698 (11th Cir. 2016) (dismissing plaintiff's § 1983 claim against District Attorney of Dougherty County in his official capacity for lack of subject matter jurisdiction because damages claim was barred by the Eleventh Amendment).

suit.[6]  "A prosecutor is entitled to absolute immunity for all actions [she] takes while performing [her] function as an advocate for the government." *Rivera v. Leal*, 359 F.3d 1350, 1353 (11th Cir. 2004) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)).   "The prosecutorial function includes the initiation and pursuit of criminal prosecution and most appearances before the court, including examining witnesses and presenting evidence."   *Id.* (citations omitted).   The inquiry takes a "functional approach": the Court looks to "the nature of the function performed, not the identity of the actor who performed it."   *Buckley*, 509 U.S. at 269.

Here, as noted above, the claims against Willis arise out of her role in Monson's prosecution.   They involve Willis's alleged decisions to offer defendant a particular plea deal; depart from her office's usual sentencing guidelines; and decline to prosecute Monson for his appearance at the Coverdell Legislative Office Building. These acts or omissions were all performed as part of Willis's prosecutorial function, as each involves "the

---

[6] Plaintiff "concedes that several of Defendant's [sic] actions are barred by prosecutorial immunity." (Doc. 21-1 at 16.)  She does not specify the actions to which she refers.

initiation and pursuit of criminal prosecution and . . . appearances before the court."   *See Rivera*, 359 F.3d at 1353.

Plaintiff does not disagree with the foregoing principles of law.  She argues instead that Willis should not be protected by prosecutorial immunity as to one alleged conversation between Willis and Arrington.  This conversation occurred while Willis was the DA-elect (Doc. 21-1 at 17) and is the conversation in which Arrington referred to Plaintiff with disparaging language.  Other than that, we are told little else about what was said.

Plaintiff contends that immunity should not apply because Willis was "performing more of an investigative function" when she and Arrington talked about Monson.  *Id*.  But the cases she cites are factually inapposite. *See, e.g., Kalina v. Fletcher,* 522 U.S. 118 (1997) (no absolute prosecutorial immunity for knowingly making false statements of fact in an affidavit supporting an application for an arrest warrant); *Buckley*, 509 U.S. 259 (no absolute prosecutorial immunity for a prosecutor's statements to the media); *Burns v. Reed*, 500 U.S. 478 (1991) (no absolute prosecutorial immunity for advising police in the investigative phase of a case).

More to the point, there are no facts alleged in the complaint to show that Willis performed an "investigative function" (or an administrative function) in her conversation with Arrington.  The few allegations about the

conversation relate to a statement that Arrington allegedly made to Willis and shed no light on Willis's role in or contribution to the conversation. Willis is entitled to absolute prosecutorial immunity, and the § 1983 claim against her will be dismissed.[7]

### B. Section 1983 Due Process Claims Against Fulton County and Commissioner Marvin Arrington

Count I of Plaintiff's complaint alleges a violation of Plaintiff's substantive due process rights under the Fourteenth Amendment to the U.S. Constitution.[8] The claim is asserted against all defendants, but it has been dismissed above as to the District Attorney's Office and Willis. Plaintiff has abandoned her § 1983 claim against the Fulton County Ethics Board.[9] The

---

[7] Even if the Court were to consider Willis' participation in this phone call as unprotected by prosecutorial immunity, that allegation alone would be insufficient to state any constitutional claim against her.

[8] The Court interprets the complaint as raising only a substantive due process claim and not a procedural due process claim. In her first claim for relief, titled "1983 Deprivation of Due Process Under Law in Violation of the Fourteenth Amendment," Plaintiff invokes only her substantive right to due process. (Doc. 1 ¶ 98.) The complaint does not elsewhere discuss or mention procedural due process or refer to the legal standard that would apply to such a claim. Plaintiff's briefing too discusses only substantive due process. (Doc. 21-1 at 8-12; Doc. 33-1 at 9-13.)

[9] Plaintiff expressly abandons her § 1983 claim against the Fulton County Ethics Board. (*See* Doc. 32-1 at 13) (conceding that Ethics Board is "not liable under Section 1983."). That claim is therefore dismissed.

discussion that follows is therefore limited to the due process claims brought against Fulton County and Commissioner Arrington. Against each of these Defendants, Plaintiff invokes a line of substantive due process cases involving a government actor's duty to protect third parties from harm. As we shall see, courts have insisted that the substantive due process right in such cases is to be interpreted exceedingly narrowly. The legal standard is set forth below, after which the claims against Fulton County and Arrington are discussed.

### 1. Legal Standard

The substantive component of the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992) (quoting *Daniels v. Williams,* 474 U.S. 327 (1986)). But the Fourteenth Amendment and Section 1983 cannot be used as a "font of tort law" to convert state tort claims into federal causes of action. *See Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.,* 229 F.3d 1069, 1074 (11th Cir. 2000). "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 195 (1989).

14

The right to substantive due process in the context of alleged abusive executive action depends on the relationship of the official and the person his acts or omissions allegedly harmed. *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1329 (11th Cir. 2020). An official has a "duty to protect individuals from harm by third parties" only when the individuals are in the official's custody. *White v. Lemacks*, 183 F.3d 1253, 1257 (11th Cir. 1999). Where, as here, no custodial relationship exists, "conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *L.S. ex rel. Hernandez*, 982 F.3d at 1330 (quoting *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003)). This standard is narrowly interpreted and applied. *Id.* "[O]nly the most egregious official conduct" qualifies under this standard, and "even intentional wrongs seldom violate the Due Process Clause." *Waddell*, 329 F.3d at 1305 (alteration adopted) (internal quotation marks omitted). Further, "[d]eterminations of what is egregious conduct must not be made in the glow of hindsight; decisions made by a government actor must be egregious—that is, shock the conscience—at the time the government actor made the decision." *Waddell*, 329 F.3d at 1305 (emphasis omitted).

Certain cases in this Circuit have suggested without deciding that deliberate indifference to "an extremely great" risk to a victim's health or safety could be sufficient to state a substantive due process claim in the non-custodial context. *See, e.g., Waddell*, 329 F.3d at 1306. *Waddell*, for example, involved a decision by law enforcement officers to release from jail and employ as a confidential informant a man with a significant criminal and substance abuse history, who soon after release caused a deadly car crash. In that case, the Eleventh Circuit assumed that a deliberate indifference standard applied to the plaintiffs' substantive due process claim, but it nevertheless upheld the grant of summary judgment for the defendant law enforcement officers.[10] The court found that the officers' decision did not "present such an extraordinary circumstance that shocks the conscience in a way that amounts to a substantive due process violation." *Id.* at 1308.

More recent cases, however, suggest that deliberate indifference will often be too low a standard to apply in substantive due process cases alleging abusive executive action in a non-custodial setting. *See, e.g., L.S. ex rel. Hernandez*, 982 F.3d at 1330 (expressing doubt that deliberate indifference can

---

[10] Although the court evaluated the plaintiffs' claims under a deliberate indifference standard, it said in a footnote that it did "not rule out today that the correct legal threshold for substantive due process liability in a case like this one is actually far higher." *Waddell*, 329 F.3d at 1306 n.5.

"ever" be arbitrary or conscience-shocking in a non-custodial setting); *Waldron v. Spicher,* 954 F.3d 1297, 1310 (11th Cir. 2020) ("No case in the Supreme Court, or in this Circuit, or in the Florida Supreme Court has held that recklessness or deliberate indifference is a sufficient level of culpability to state a claim of violation of substantive due process rights in a non-custodial context"); *Davis v. Carter*, 555 F.3d 979, 983 (11th Cir. 2009) ("[D]eliberate indifference is insufficient to constitute a due-process violation in a non-custodial setting."). *Waldron,* for example, held that a deputy who blocked aid to an injured victim could not be liable for a substantive due process violation unless he "intended to cause harm" in the form of death or serious injury. *Waldron*, 954 F.3d at 1312. And in *L.S. ex rel. Hernandez,* the Court required an allegation of "intentional wrongdoing" where students alleged that an incompetent police response to a school shooting violated their substantive due process rights. 982 F.3d at 1331.[11]

In any case involving allegedly abusive executive action, the analysis will be context-specific because the "concern with preserving the constitutional

---

[11] *But see Hughes v. Locure*, No. 3:22-CV-312-RAH, 2023 WL 2457367, at *3-*6 (M.D. Ala. Mar. 10, 2023) (denying motion to dismiss due process claim and declining to apply the "purpose to cause harm" standard, where an intoxicated defendant sheriff's deputy struck and killed a woman while driving more than 50 miles per hour over the speed limit). !

proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998). And both the applicable standard and the result may depend in part on whether the context involves "[t]he necessity for split-second decision making" which would weigh in favor of the "purpose to cause harm" standard. *Waldron*, 954 F.3d at 1311; *see also Lewis*, 523 U.S. at 853.

### 2. Section 1983 Claim Against Fulton County

Plaintiff seeks to hold Fulton County liable for certain actions by Willis and Arrington that, she argues, resulted in a plea deal and sentence that was too lenient for Monson. To succeed on a § 1983 claim under *Monell*, Plaintiff would have to prove that (1) something that qualifies as an official local-government policy (2) was the "moving force" that "actually caused" (3) the plaintiff's constitutional injury. *See Connick v. Thompson*, 563 U.S. 51, 59 n.5 (2011); *see also McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). A plaintiff, like Mainor, has two methods by which to establish a county's policy: identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county. *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003). Under either avenue, a plaintiff:

> (1) must show that the local governmental entity, here the county, has authority and responsibility over the governmental function in issue and (2) must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue.

*Grech*, 335 F.3d at 1330. It is essential for a plaintiff to show that the "municipality *itself*," through an official policy or practice, "cause[d] the constitutional violation." *City of Canton v. Harris*, 489 U.S. 379, 385 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). For "[l]ocal governments can never be liable under § 1983 for the acts of [officials] whom the local government has no authority to control." *Turquitt v. Jefferson Cnty.*, 137 F.3d 1285, 1292 (11th Cir. 1998).

Plaintiff's claim against Fulton County cannot succeed because she does not satisfy the first part of the *Grech* test; she cannot show that Fulton County had responsibility for the challenged actions. Any claim to the contrary is foreclosed by circuit precedent. *See Owens v. Fulton Cnty.*, 877 F.2d 947 (11th Cir. 1989).

*Owens* involved a plaintiff who alleged that he had been wrongfully convicted of a criminal offense. After it was discovered that others committed the crime in question, the plaintiff was granted a new trial and moved to dismiss the indictment. When the district attorney refused to do so, the

19

plaintiff filed suit against Fulton County, alleging that the county, through the actions of the district attorney, violated plaintiff's Fourteenth Amendment right not to be deprived of liberty without due process. The Eleventh Circuit in *Owens* examined under Georgia law the relationship between a district attorney and a county and considered the function the prosecutor performed when he undertook the challenged conduct. It concluded that "the district attorney for the Atlanta Judicial Circuit is not a Fulton County official, but rather a state official acting on behalf of the state when exercising his discretion in prosecutorial decisions." *Id.* at 951. The alleged violation of the plaintiff's constitutional rights arose "out of the district attorney's exercise of discretion in the prosecution of state offenses, a state-created power" and therefore the county could not be liable for his actions. *Id.* at 952.

As in *Owens*, here too, "[t]he matter in dispute . . . is the district attorney's authority over prosecutorial decisions, which is vested by state law pursuant to state authority." *Id.* Fulton County does not control decisions such as: the kinds of plea bargains offered to defendants; the circumstances under which prosecutors exercise discretion to depart from office policy; the identities of persons to be interviewed in a criminal investigation; the degree to which victims of crime are consulted about plea bargaining decisions; or the prosecutor's decision to pursue criminal charges. All such decisions involve the

20

exercise of the district attorney's prosecutorial discretion, and as in *Owens*, Fulton County cannot be held liable for them. *Id.* at 952; *see also Vandiver v. Meriwether Cnty.,* 325 F. Supp. 3d 1321, 1331 (N.D. Ga. 2018) (stating that a county had "no say in the manner in which the district attorney exercises his authority to bring criminal prosecutions *on behalf of the State.*") (emphasis in original).

Plaintiff next argues that Fulton County is liable for the actions of Marvin Arrington because he was a "policymaker[]" for the county and one of the "moving forces behind" the alleged constitutional violations. (Doc. 1, Compl. ¶ 103, 104.) To determine if an individual is a policymaker, courts employ a functional analysis. *Vandiver*, 325 F. Supp. 3d at 1329. "The practical test . . . is whether the decisionmaker, by virtue of his official conduct, serves as the final authority or ultimate repository of county power." *Id.* (quoting *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980)) (internal quotation marks omitted). Plaintiff has not plausibly alleged that Arrington serves as the final policymaker for the county with respect to the investigation of crimes, the decision to prosecute people for criminal offenses, the negotiation of plea bargains, or the prosecutors' communications with victims of crime. To the extent Plaintiff challenges acts by Arrington that do not fall in the categories listed above, Plaintiff presents no authority to show

21

that any such act by Arrington—who is one of many Fulton County commissioners—can make policy for the county.[12]

For the foregoing reasons, Plaintiff has not plausibly alleged facts to show that Fulton County has authority and responsibility over the government functions and actions challenged in this case. *Grech,* 335 F.3d at 1330. Fulton County's motion to dismiss the Section 1983 claim is granted.

### 3. Section 1983 Claim Against Marvin Arrington

Plaintiff alleges a § 1983 claim against Arrington in his official and individual capacities. The claim against Arrington in his official capacity is the same as the claim against Fulton County. *Bd. of Comm'rs v. Johnson,* 717 S.E.2d 272, 276 (Ga. Ct. App. 2011) ("[S]uits against county employees in their official capacities are in reality suits against the county itself."). That claim was dismissed above.

As for the individual capacity claim, Plaintiff alleges that Arrington engaged in various acts that resulted in Monson receiving a too-lenient

---

[12] *See, e.g., Matthews v. Columbia Cnty.*, 294 F. 3d 1294, 1297 (11th Cir. 2002) ("Because policymaking authority rests with the Commission as an entity, the County can be subject to liability only if the Commission itself acted with an unconstitutional motive. An unconstitutional motive on the part of one member of a three-member majority is insufficient to impute an unconstitutional motive to the Commission as a whole.")

sentence. Those acts, according to Plaintiff's theory, precipitated Monson's early release and the resumption of his stalking behavior.

As noted above, where no custodial relationship exists between the litigant and the defendant-official, "conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *L.S. ex rel. Hernandez*, 982 F.3d at 1330 (quoting *Waddell*, 329 F.3d at 1305). There is some ambiguity as to whether the facts in this case call for application of a deliberate indifference or a "purpose to cause harm" standard of culpability. We need not resolve that question here because Plaintiffs' allegations do not satisfy either standard.

The key allegations against Arrington involve actions that he took on behalf of Monson as Monson's criminal defense lawyer.[13] They are as follows:

---

[13] In the usual case, a criminal defense attorney does not "act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding[,]" and a complaint "based on such activities ... must be dismissed." *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *see also Larry v. Mercer*, No. 15-12153-E, 2015 WL 9917185, at *2 (11th Cir. Nov. 17, 2015) (finding the plaintiff's public defender did not act under color of state law); *Rolle v. Raysor*, 267 F. App'x 925, 926 (11th Cir. 2008) ("[A] defense attorney is not a state actor under section 1983."). Liberally construed, Plaintiff's complaint alleges that the usual rule should not apply here because Arrington exercised his authority as a county commissioner to obtain a favorable outcome for his client. The Court assumes, without deciding, that Arrington was a state actor under § 1983.

- Arrington used his influence as county commissioner to broker a plea deal that was too lenient and contravened DA office policy.  (Doc. 1, Compl. ¶ 38.)

- Arrington took actions to remove a judge from the case to receive a more favorable outcome for his client.  (*Id.* ¶ 39.)

- Arrington had *ex parte* meetings with another judge about Monson's case (*Id.*)

- Arrington told his client on a recorded jail call that his position on the Commission would achieve a "favorable result."  (*Id.* ¶ 40.)

- Arrington defamed Mainor to Willis by referring to her with derogatory language.  (*Id.* ¶ 41.)

Plaintiff candidly acknowledges the high burden she faces in bringing this claim.  (*See* Doc. 33-1) (conceding that courts have "expressed doubt that deliberate indifference can ever be arbitrary or conscience-shocking in non-custodial cases.").  She contends, however, that the facts above amount to conscience-shocking conduct because Arrington conspired with Willis "to secure an inappropriate and dangerous plea deal for Monson."  (Doc. 33-1.)

The allegations do not plausibly show that Arrington acted with the purpose to harm Mainor.  Nor can they be read, under the deliberate indifference standard, to show that Arrington knew and disregarded "an

extremely great risk" to Mainor's health or safety.  *See, e.g., Waddell*, 329 F.3d at 1306.  The problem is that most of the allegations about Arrington's conduct concern his alleged abuse of his position as a county commissioner.  While those allegations might raise ethical questions—potentially serious ones—if true, they do not have much relevance to the question of Arrington's deliberate indifference to, or purpose to cause, harm to Mainor.  For the alleged harm in question occurred because of the plea deal Arrington secured, not the way he secured it.  And there is no basis in the law to hold criminal defense attorneys liable for constitutional violations based on their clients' post-sentencing conduct.  As the Eleventh Circuit stated in *Waddell*:

> One might find fault in Defendants' behavior.  But no substantive due process right exists to be protected generally from the release from confinement of persons convicted of crimes—even if the release violates state law.

982 F.3d at 1306-07.  The facts presented here do not constitute the kind of "most egregious official conduct" that can be characterized as arbitrary or conscience shocking in a constitutional sense.  *Id*. at 1330.

### C. State Law Claims

In addition to her due process claim, Plaintiff has sued Willis and Arrington for intentional infliction of emotional distress.  The complaint also

contains a claim against Arrington, Willis, and the Fulton County Ethics Board for violation of the Georgia RICO statute, O.C.G.A. § 16-14-4.

In the preceding sections, the Court has found that all § 1983 claims are due to be dismissed. A district court may decline to exercise supplemental jurisdiction over a state law claim once it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *see also Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006). "Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction." *Ameritox, Ltd. v. Millennium Lab'ys, Inc.,* 803 F.3d 518, 537 (11th Cir. 2015) (internal quotations and citation omitted).

The Eleventh Circuit has held that "[b]oth comity and economy are served when issues of state law are resolved by state courts." *Rowe v. City of Ft. Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002). The Circuit has further "encouraged" district courts to dismiss any remaining state law claims when, as here, the federal claims have been dismissed prior to trial. *Raney v. Allstate Ins. Co.,* 370 F.3d 1086, 1089 (11th Cir. 2004); *see also Reddy v. Gilbert Med. Transcription Serv., Inc.*, 588 F. App'x 902, 904 (11th Cir. 2014) ("Absent a viable federal claim . . . the district court should dismiss any state law claims.")

The remaining state law claims are best resolved by the Georgia courts since they depend on determinations of state law. *Baggett v. First Nat'l Bank,* 117 F.3d 1342, 1353 (11th Cir. 1997) ("State courts, not federal courts, should be the final arbiters of state law"). Taking into account concerns of judicial comity, judicial economy, fairness and convenience, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. They are dismissed without prejudice.[14]

## IV.    Conclusion

Defendants' motions to dismiss are **GRANTED**. (Doc. 13, 16, 20.) Plaintiff's § 1983 due process claim (Count I) is **DISMISSED**. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. The state law claims (Counts II and III) are dismissed **WITHOUT PREJUDICE**. As no matters remain pending before the Court, the Clerk is directed to close this case.

**SO ORDERED** this 28th day of March, 2023.

SARAH E. GERAGHTY
United States District Judge

---

[14] In accordance with 28 U.S.C. § 1367(d), if there is a statute of limitations that would otherwise bar the plaintiff's state claim, it should be tolled for at least thirty (30) days so the plaintiff can bring the action in state court.